# EXHIBIT C

1   Neama Rahmani (State Bar No. 223819)
        *efilings@westcoasttriallawyers.com*
2   Ronald L. Zambrano (State Bar No. 255613)
        *ron@westcoasttrialaywyers.com*
3   Ashley J. Garay (State Bar No. 318131)
        *ashleyg@westcoasttriallawyers.com*
4   Lilit Kyababchian (State Bar No. 355320)
        *lilit@westcoasttriallawyers.com*
5   WEST COAST TRIAL LAWYERS, APLC
6   1147 South Hope Street
    Los Angeles, California 90015
7   Telephone: (213) 927-3700
    Facsimile: (213) 927-3701
8
9   Attorneys for Plaintiff,
    PAUL MARTINEAU

Electronically FILED by
Superior Court of California,
County of Los Angeles
11/18/2024 9:31 PM
David W. Slayton,
Executive Officer/Clerk of Court,
By E. Salcido, Deputy Clerk

10              SUPERIOR COURT OF THE STATE OF CALIFORNIA

11                   FOR THE COUNTY OF LOS ANGELES

12

13  PAUL MARTINEAU, an Individual,          Case No.:  24LBCV02554

14                                                  COMPLAINT FOR DAMAGES

15              Plaintiff,
                                            1)  DISABILITY DISCRIMINATION IN VIOLATION OF
16                                              FEHA;

17          v.                              2)  FAILURE TO ACCOMMODATE IN VIOLATION OF
                                                FEHA;
18
    CITIZENS TELECOM SERVICES              3)  FAILURE TO ENGAGE IN THE INTERACTIVE
19  COMPANY LLC, a Delaware Limited            PROCESS IN VIOLATION OF FEHA;
    Liability Company; FRONTIER
20  COMMUNICATIONS PARENT, INC., a          4)  FAILURE TO PREVENT AND/OR REMEDY
    Delaware Corporation; THE                   DISCRIMINATION & RETALIATION IN VIOLATION
21  PRUDENTIAL INSURANCE COMPANY              OF FEHA;
    OF AMERICA, a New Jersey Corporation;
22  and DOES 1 through 10, inclusive,
                                            5)  RETALIATION IN VIOLATION OF FEHA; AND
23
                                            6)  WRONGFUL TERMINATION IN VIOLATION OF
24              Defendants.                      PUBLIC POLICY.

25

26                                              **DEMAND FOR JURY TRIAL**

27

28

                                          1
    ─────────────────────────────────────────────────────────────
                COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, PAUL MARTINEAU (who hereinafter shall be referred to as the "PLAINTIFF" or as "Mr. MARTINEAU"), who hereby respectfully alleges as follows:

1. Plaintiff, PAUL MARTINEAU, at all times relevant hereto was a resident of the State of California, County of Orange.

2. Plaintiff is informed and believes and thereon alleges that Defendant, CITIZENS TELECOM SERVICES COMPANY LLC (hereinafter referred to as "CTS"), is an entity organized and existing under the laws of the State of Delaware, with its principal place of business located at 5077 East Lew Davis Street, Long Beach, California 90808.

3. Plaintiff is informed and believes and thereon alleges that Defendant, FRONTIER COMMUNICATIONS PARENT, INC. (hereinafter referred to as "FRONTIER"), is an entity organized under the laws of the State of Delaware with a principal place of business located at 5077 East Lew Davis Street, Long Beach, California 90808.

4. Plaintiff is informed and believes and thereon alleges that Defendant, THE PRUDENTIAL INSURANCE COMPANY OF AMERICA (hereinafter referred to as "PRUDENTIAL"), is an entity organized under the laws of the State of New Jersey, which provides absence management services to employers in California and is authorized to conduct business in the State of California, with a principal place of business located at 751 Broad Street, Newark, New Jersey 07102.

5. The true names and capacities of the Defendants named herein as DOES 1 through 10, inclusive, whether individual, corporate, partnership, association or otherwise, are unknown to Plaintiff who therefore sues these Defendants by such fictitious names pursuant to California Code of Civil Procedure section 474. Plaintiff is informed and believes that all the DOES Defendants are California residents. Plaintiff will amend this Complaint to show such true names and capacities when they have been determined.

6.  Plaintiff is informed and believes, and thereby alleges that each of the Defendants herein were always relevant hereto the agent, employee, or representative of the remaining Defendants and were acting at least in part, within the course and scope of such relationship in doing the things herein alleged.

7.  Plaintiff is informed and believes, and thereby alleges that each of the Defendants were acting in a single or joint employer, agency, employer, and/or alter ego capacity such that they are liable for the acts of their agents and/or employees.

8.  Plaintiff is informed and believes, and thereby alleges that each of the Defendants were acting as an integrated enterprise, and are liable for the acts of their agents and/or employees.

**FACTUAL ALLEGATIONS**

9.  On or about October 23, 2023, Mr. MARTINEAU was hired by FRONTIER and CTS as a Senior Account Executive. At all times during Mr. MARTINEAU's employment, FRONTIER was the parent company of, owned and operated, CTS.

10. Throughout his tenure with Defendants, Mr. MARTINEAU worked a hybrid work schedule which included remote work and two days in an office located at 5077 East Lew Davis St., Long Beach, California 90808. Throughout his time working for Defendants, Mr. MARTINEAU was an exemplary employee and received no write ups.

11. On or about July 9, 2024, the Mr. MARTINEAU's psychological therapist Tj Punchard MA, MA, acting under the supervision of Dr. Jamie Brown, Psy. D. placed Mr. MARTINEAU on a short-term disability leave due to stress and anxiety. The therapist provided a note indicating that Mr. MARTINEAU's condition would create barriers to social interaction, including customer contact, direct supervision, and small group work. As a result, Mr. MARTINEAU was designated as totally and *temporarily* disabled. Mr. MARTINEAU's initial return to work date was September 15, 2024.

3

12. On or about July 9, 2024, the same day Mr. MARTINEAU received his note, Mr. MARTINEAU emailed the note to Defendant's human resources representatives, Dara Chenevert ("Ms. Chenevert") and Erin Palmer ("Ms. Palmer"). Mr. MARTINEAU indicated that he would need to take a leave from work.

13. On or about July 10, 2024, Ms. Palmer emailed Mr. MARTINEAU informing him that he would need to use PTO for the first 5 days of illness. According to the email, if the illness extended beyond five (5) business days, Mr. MARTINEAU was eligible for full/partial short-term disability and would need to open a s short term disability claim with PRUDENTIAL. Mr. MARTINEAU promptly submitted his short-term disability request to PRUDENTIAL and received an email confirming his request from July 10, 2024, through September 15, 2024.

14. On or about July 16, 2024, PRUDENTIAL sent Mr. MARTINEAU a letter indicating they are "currently reviewing [Mr. MARTINEAU's] claim for Short Term Disability (STD) offered through Frontier Communications." In the letter PRUDENTIAL requested Mr. MARTINEAU's doctor's notes from July 1, 2024, through July 16, 2024, and recommended Mr. MARTINEAU authorize his provider to submit documentation directly to PRUDENTIAL. Mr. MARTINEAU promptly provided the requested doctor's notes and authorizations to PRUDENTIAL.

15. On or about August 19, 2024, PRUDENTIAL sent Mr. MARTINEAU a letter denying Mr. MARTINEAU's leave request. The letter stated: "We have completed our review of your request for loss of income benefits and leave of absence benefits. Please read this letter in its entirety. It provides you with important information about the loss of income benefits and leave of absence services we administer for your employer." The letter went on to indicate that PRUDENTIAL was "unable to approve [Mr. MARTINEAU's] loss of income benefits." PRUDENTIAL's letter stated that "[Mr. MARTINEAU's] symptoms are directly related to going out on medical leave. There is no increase in treatment or severity of symptoms that would prevent [Mr. MARTINEAU] from performing [his] regular occupation. Therefore, [PRUDENTIAL] [has] determined that the

COMPLAINT AND DEMAND FOR JURY TRIAL

information in [Mr. MARTINEAU's] file does not support impairment that would prevent [Mr. MARTINEAU] from performing the material and substantial duties of [his] regular occupation. As a result, [PRUDENTIAL] [has] denied [Mr. MARTINEAU's] claim."

16. On or about August 19, 2024, Mr. MARTINEAU sent his therapist a text message and informed him of his leave request denial. Mr. MARTINEAU's therapist said he would send PRUDENTIAL a letter to clarify Mr. MARTINEAU's need for a leave.

17. On or about August 26, 2024, human resources representative Jaclynn Unangst ("Ms. Unangst") sent Mr. MARTINEAU a letter indicating that Mr. MARTINEAU has been continuously absent from work since July 10, 2024, and since his short-term disability leave was denied, Mr. MARTINEAU's absences were unexcused. The letter went on to indicate that Mr. MARTINEAU's job was in jeopardy. However, Mr. MARTINEAU did not receive this letter until September 20, 2024, when Ms. Unangst emailed it to Mr. MATINEAU directly. Defendants had Mr. MARTINEAU's old address and email address on file.

18. On or about August 30, 2024, Ms. Unangst sent Mr. MARTINEAU a termination letter from Defendants. The letter indicated Mr. MARTINEAU was terminated due to job abandonment. However, Mr. MARTINEAU did not discover he had been terminated until September 20, 2024, when Ms. Unangst emailed him the termination letter and warning letters directly. Further, Ms. MARTINEAU did not receive a physical copy of the termination letter until the letter was forwarded to his new address by USPS on September 21, 2024. Notably, the termination letter had a postmark date of September 6, 2024.

19. On or about September 16, 2024, Mr. MARTINEAU, while still unaware he had been terminated, emailed Ms. Palmer a new note from his therapist that extended his leave until November 15, 2024. Additionally, Mr. MARTINEAU requested Defendants complete an EDD form so that he could receive State disability benefits. The next day, on or about September 17, 2024, Ms. Palmer replied

to Mr. MARTINEAU's email and said, "I am not your HRBP." Ms. Palmer then redirected Mr. MARTINEAU to Ms. Unangst.

20. On or about September 17, 2024, Mr. MARTINEAU, still unaware he had been terminated, uploaded an updated treatment summary from his therapist onto PRUDENTIAL's online portal.

21. On or around September 20, 2024, Ms. Unangst replied to Mr. MARTINEAU's email and informed him that the EDD form was already completed and sent to the State. Additionally, Ms. Unangst told Mr. MARTINEAU he was terminated and attached his termination letter along with the aforementioned warning letter to the email. Finally, Ms. Unangst told Mr. MARTINEAU he was overpaid $15,525.49 while he was absent and told Mr. MARTINEAU to reach out to discuss repayment.

### FIRST CAUSE OF ACTION

#### (FEHA Disability Discrimination)

#### (Plaintiff Against All Defendants)

22. Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

23. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of California Fair Employment and Housing Act ("FEHA"), Government Code, § 12926(d).

24. This cause of action is brought pursuant to the FEHA, Gov. Code § 12940(a), prohibiting termination of an employee, such as Plaintiff, from employment or discriminate against employees, such as Plaintiff, on the basis of the employee's disability.

//

//

25. Plaintiff had a disability, specifically a medical condition for which required a brief medical leave of absence.

26. Plaintiff informed Defendants of his disability and his need for a brief medical leave of absence on multiple occasions.

27. Despite this, Defendants took adverse actions against Plaintiff, including but not limited to, ultimately terminating his employment, purportedly for failing to provide the requested documentation.

28. Defendants' adverse actions, including, but not limited to, terminating Plaintiff, were at least in part, in retaliation for Plaintiff's disability.

29. But for Plaintiff's disability, Defendants would not have taken adverse employment actions of terminating him. Plaintiff's disability, leave of absence, and request for an additional leave of absence were the substantial motivating factors for his termination.

30. As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

31. As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to his damage in an amount according to proof.

32. Defendants did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized, and ratified by Defendants. Plaintiff is thus entitled to recover punitive

damages from the Defendants, and each of them, in an amount according to proof.

33. Defendants have a pattern and practice of discriminating against employees with disabilities.

34. Moreover, Defendants facially neutral policy of nondiscrimination in employment decisions has an unfavorable impact on those employees who are in a similar position to Plaintiff.

35. Plaintiff timely filed a charge of discrimination and received a Notice of Right to Sue from the California Civil Rights Department. (See Exhibit A hereto.) Thus, Plaintiff has exhausted his administrative remedies. (See Exhibit A hereto.)

## SECOND CAUSE OF ACTION

### (Failure to Accommodate)

### (Plaintiff Against All Defendants)

36. Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

37. Plaintiff, at all relevant times herein, suffered from a FEHA-protected disability.

38. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

39. This cause of action is brought pursuant to the FEHA, Gov. Code, §§ 12940(m) requiring employers to make reasonable accommodations for disability conditions of employees, such as Plaintiff.

//

//

40. Defendants were made aware of Plaintiff's disability, set forth in detail above, due to the fact that Plaintiff promptly notified Defendants and repeatedly told Defendants of his disability and need for a subsequent medical leave of absence.

41. Defendants have an affirmative duty under FEHA to reasonably accommodate disabled workers. Such duty arises regardless of whether the employee requested any accommodation. FEHA entitles disabled employees to preferential consideration in the reassignment of existing employees. *Jensen v. Wells Fargo Bank* (2000) 85 Cal. App.4th 245.

42. Despite Plaintiff's consistent communication regarding his disability and need for a subsequent medical leave of absence, Defendants failed to accommodate him and instead terminated his employment.

43. Instead of accommodating Plaintiff, Defendants terminated Plaintiff. At all times mentioned herein, Plaintiff was willing and able to perform the duties and functions of his position or an alternate position if such reasonable accommodation had been made by Defendants, and each of them. At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disabilities, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operations of Defendants' business.

44. Plaintiff's disability, leave of absence, and request for an additional leave of absence were the substantial motivating factors for his termination.

45. Defendants have a pattern and practice of discriminating against employees with disabilities.

46. Moreover, Defendants facially neutral policy of nondiscrimination in employment decisions has an unfavorable impact on those employees who are in a similar position to Plaintiff.

COMPLAINT AND DEMAND FOR JURY TRIAL

47.  As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

48.  As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to his damage in an amount according to proof.

49.  Defendants did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized, and ratified by Defendants. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

50.  Plaintiff timely filed a charge of discrimination and received a Notice of Right to Sue from the California Civil Rights Department. (See Exhibit A hereto.) Thus, Plaintiff has exhausted his administrative remedies. (See Exhibit A hereto.)

### THIRD CAUSE OF ACTION

**(Failure to Engage in the Interactive Process)**

**(Plaintiff Against All Defendants)**

51.  Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

52.  At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

//

//

53. Plaintiff, at all relevant times herein, suffered from a FEHA-protected disability. Defendants were made aware of Plaintiff's disability, set forth in detail above, due to the fact that Plaintiff immediately notified Defendants of his disability and need for a medical leave of absence.

54. Plaintiff needed, and Defendants were aware or should have known the need for accommodation of the disabilities, and/or he requested Defendants provide a reasonable accommodation for the disability.

55. Defendants had an obligation to engage in good faith in the interactive process to determine an effective reasonable accommodation for these disabilities.

56. Defendants have a pattern and practice of failing to engage in the good faith interactive process. Moreover, Defendants' facially neutral policy of non-discrimination in employment decisions has an unfavorable impact on those employees who are in a similar position to Plaintiff.

57. Defendants did not engage in a timely, good faith interactive process with Plaintiff to find accommodations for Plaintiff's disability.

58. Plaintiff did not cause the breakdown of the interactive process with Defendants. Rather, Defendants caused the breakdown in the interactive process with Plaintiff when they refused to provide Plaintiff accommodations for his disability. As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

59. As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to his damage in an amount according to proof.

60. Defendants did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized, and ratified by Defendant. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

61. Plaintiff timely filed a charge of discrimination and received a Notice of Right to Sue from the California Civil Rights Department. (See Exhibit A hereto.) Thus, Plaintiff has exhausted his administrative remedies. (See Exhibit A hereto.)

## FOURTH CAUSE OF ACTION

**(Failure to Prevent and Remedy Discrimination and Retaliation in Violation of FEHA)**

**(Plaintiff Against All Defendants)**

62. Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

63. Plaintiff was at all times material hereto an employee covered by California Government Code §12940 et seq.

64. Defendant were at all times material hereon an employer within the meaning of the California Government Code section 12940 et seq.

65. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

66. It is illegal to fail to prevent and/or remedy discrimination and retaliation.

//

//

67. Defendants failed to do so. The very individuals who were tasked with preventing discrimination and retaliation in the workplace were complicit and perpetuated the unlawful acts.

68. As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to his damage in an amount according to proof.

69. Defendants did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized, and ratified by Defendants. Plaintiff is thus entitled to recover punitive damages from the Defendants, and each of them, in an amount according to proof.

70. As the result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorney's fees and costs of suit as provided by FEHA, Gov. Code § 12965(b).

71. Plaintiff timely filed a charge of discrimination and received a Notice of Right to Sue from the California Civil Rights Department. (See Exhibit A hereto.) Thus, Plaintiff has exhausted his administrative remedies. (See Exhibit A hereto.)

**FIFTH CAUSE OF ACTION**

**(Retaliation in Violation of FEHA)**

**(Against all Defendants)**

72. Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

73. At all times mentioned in this complaint, Defendants regularly employed five or more persons, bringing Defendants within the provisions of the FEHA, Gov. Code, § 12926(d).

74. At all times herein relevant, there was an employer/employee, agency, or other qualified relationship between Plaintiff and the Defendants.

75. At all times herein mentioned, FEHA, Government Code section 12940, et seq., was in full force and effect and was binding on Defendants. This statute requires Defendants to refrain from retaliating against any employee making complaints or opposing discrimination, harassment, or retaliation, or otherwise engaging in activity protected by the FEHA, including for seeking to exercise rights guaranteed under FEHA.

76. It is against the law to discriminate against an employee for requesting accommodations and for taking medical leave due to a disability.

77. Plaintiff's request for accommodation and/or medical leave were substantial motivating factors in his termination.

78. Defendants ultimately terminated Plaintiff, for reasons and in a manner contrary to FEHA, on a pre-textual basis, because of his disability and requests for accommodation.

79. As a proximate result of Defendants' discrimination against Plaintiff, Plaintiff has suffered and continues to suffer substantial losses in earnings, and other employment and retirement benefits and has suffered and continues to suffer embarrassment, humiliation, and mental anguish all to his damage in an amount according to proof.

//

//

//

COMPLAINT AND DEMAND FOR JURY TRIAL

80. Defendants did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights. The acts alleged herein were known to, authorized, and ratified by Defendants. Plaintiff is thus entitled to recover punitive damages from Defendants, and each of them, in an amount according to proof.

81. As a result of Defendants' discriminatory acts as alleged herein, Plaintiff is entitled to reasonable attorneys' fees and costs of said suit as provided by California Government Code section 12965, subsection (b).

82. Plaintiff timely filed a charge of discrimination and received a Notice of Right to Sue from the California Civil Rights Department. (See Exhibit A hereto.) Thus, Plaintiff has exhausted his administrative remedies. (See Exhibit A hereto.)

**SIXTH CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy)**

**(Against all Defendants)**

83. Plaintiff repeats and realleges the paragraphs above as if the same were fully set forth herein and with the same full force and effect.

84. Plaintiff was subjected to retaliation and discrimination as a result of the Defendants' violation of fundamental public policies. It is against California Public Policy to discriminate against an employee because of disability. It is against California Public Policy to retaliate against an employee for requesting an accommodation.

//

//

//

85. Under California Law, no employee, whether they are an at-will employee, or an employee under a written contract or other employment contract, can be terminated for a reason that is in violation of a fundamental public policy. In recent years, California courts have interpreted a fundamental public policy to be an articulatable, statutory [provision, or regulation that is concerned with a matter effecting society at large rather than a purely personal or proprietary interest of the employee or the employer. Moreover, the public policy must be fundamental, substantial, and well established at the time of discharge. *Tameny v. Atlantic Richfield Co.* (1980) 27 Cl.3rd 167.

86. As alleged above, Plaintiff was terminated for reasons that violated public policy including but not limited to, state laws, including The Fair Employment and Housing Act (FEHA), which is codified in California Government Code §§ 12900-12996. FEHA protects employees and provides a legal right to not be discriminated against for a disability. Further FEHA creates an obligation for employers to engage in good faith in the interactive process to determine an effective reasonable accommodation for these disabilities, to reasonably accommodate disabled workers, and to prevent and remedy discrimination and retaliation.

87. This discrimination and retaliation were a substantial motivating reason for the termination of Plaintiff in direct contradiction to Defendants' affirmative obligations under FEHA.

88. As a direct and proximate result of Defendants' actions, Plaintiff has suffered general, special, and consequential damages including, but not limited to, substantial loss of earnings, bonuses, deferred compensation and other employment benefits, emotional distress, mental anguish, embarrassment, humiliation, and anxiety, in an amount according to proof at the time of trial within the jurisdiction of this court.

89. Defendants, and each of them, did the acts herein alleged maliciously, fraudulently, and oppressively, amounting to despicable conduct, and in conscious disregard of Plaintiff's rights.

//

90. The acts alleged herein were known to, authorized, and ratified by Defendants. Plaintiff is thus entitled to recover punitive damages from defendants, and each of them, in an amount according to proof.

### PRAYER

WHEREFOR, Plaintiff request relief as follows:

1. For compensatory economic damages according to proof including losses incurred in seeking substitute employment and loss earnings and other employment benefits;

2. For compensatory non-economic damages for losses resulting from humiliation, mental anguish, and emotional distress according to proof;

3. For interest on the amount of losses incurred in earnings, deferred compensation and other employee benefits at the prevailing legal rate;

4. For statutory and civil penalties;

5. For punitive damages according to proof;

6. For costs incurred by plaintiff, including reasonable attorney's fees;

7. For such other and further relief as the Court may deem proper.

Dated:  November 18, 2024                    WEST COAST TRIAL LAWYERS, APLC

                                             By: _____
                                                 Ronald L. Zambrano, Esq.
                                                 Ashley J. Garay, Esq.
                                                 Lilit Kyababchian, Esq.
                                                 Attorneys for Plaintiff,
                                                 PAUL MARTINEAU


## DEMAND FOR JURY TRIAL


Plaintiff hereby demands trial by jury.


Dated:  November 18, 2024                    WEST COAST TRIAL LAWYERS, APLC

                                             By: _____
                                                 Ronald L. Zambrano, Esq.
                                                 Lilit Kyababchian, Esq.
                                                 Ashley J. Garay, Esq.
                                                 Attorneys for Plaintiff,
                                                 PAUL MARTINEAU

COMPLAINT AND DEMAND FOR JURY TRIAL

EXHIBIT "A"

STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                           KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 18, 2024

Ronald Zambrano
1147 South Hope Street
Los Angeles, California 90015

RE:     **Notice to Complainant's Attorney**
        CRD Matter Number: 202411-27091918
        Right to Sue: Martineau / CITIZENS TELECOM SERVICES COMPANY LLC et
        al.

Dear Ronald Zambrano:

Attached is a copy of your complaint of discrimination filed with the Civil Rights
Department (CRD) pursuant to the California Fair Employment and Housing Act,
Government Code section 12900 et seq. Also attached is a copy of your Notice of Case
Closure and Right to Sue.

**Pursuant to Government Code section 12962, CRD will not serve these
documents on the employer.** You must serve the complaint separately, to all named
respondents. Please refer to the attached Notice of Case Closure and Right to Sue for
information regarding filing a private lawsuit in the State of California. A courtesy "Notice
of Filing of Discrimination Complaint" is attached for your convenience.

Be advised that the CRD does not review or edit the complaint form to ensure that it
meets procedural or statutory requirements.

Sincerely,

Civil Rights Department



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                    GAVIN NEWSOM, GOVERNOR

KEVIN KISH, DIRECTOR

**Civil Rights Department**
651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 18, 2024

RE:    **Notice of Filing of Discrimination Complaint**
       CRD Matter Number: 202411-27091918
       Right to Sue: Martineau / CITIZENS TELECOM SERVICES COMPANY LLC et al.

To All Respondent(s):

Enclosed is a copy of a complaint of discrimination that has been filed with the Civil Rights Department (CRD) in accordance with Government Code section 12960. This constitutes service of the complaint pursuant to Government Code section 12962. The complainant has requested an authorization to file a lawsuit. A copy of the Notice of Case Closure and Right to Sue is enclosed for your records.

Please refer to the attached complaint for a list of all respondent(s) and their contact information.

No response to CRD is requested or required.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)



STATE OF CALIFORNIA | Business, Consumer Services and Housing Agency                                    GAVIN NEWSOM, GOVERNOR

**Civil Rights Department**                                                                              KEVIN KISH, DIRECTOR

651 Bannon Street, Suite 200 | Sacramento | CA | 95811
1-800-884-1684 (voice) | 1-800-700-2320 (TTY) | California's Relay Service at 711
calcivilrights.ca.gov | contact.center@calcivilrights.ca.gov

November 18, 2024

Paul Martineau

,

RE:    **Notice of Case Closure and Right to Sue**
       CRD Matter Number: 202411-27091918
       Right to Sue: Martineau / CITIZENS TELECOM SERVICES COMPANY LLC et
       al.

Dear Paul Martineau:

This letter informs you that the above-referenced complaint filed with the Civil Rights
Department (CRD) has been closed effective November 18, 2024 because an
immediate Right to Sue notice was requested.

This letter is also your Right to Sue notice. According to Government Code section
12965, subdivision (b), a civil action may be brought under the provisions of the Fair
Employment and Housing Act against the person, employer, labor organization or
employment agency named in the above-referenced complaint. The civil action must be
filed within one year from the date of this letter.

To obtain a federal Right to Sue notice, you must contact the U.S. Equal
Employment Opportunity Commission (EEOC) to file a complaint within 30 days
of receipt of this CRD Notice of Case Closure or within 300 days of the alleged
discriminatory act, whichever is earlier.

Sincerely,

Civil Rights Department

CRD - ENF 80 RS (Revised 2024/05)

1
2
3
4

**COMPLAINT OF EMPLOYMENT DISCRIMINATION
BEFORE THE STATE OF CALIFORNIA
Civil Rights Department
Under the California Fair Employment and Housing Act
(Gov. Code, § 12900 et seq.)**

5   **In the Matter of the Complaint of**

Paul Martineau                                          CRD No. 202411-27091918

6                                   Complainant,

7   vs.

8   CITIZENS TELECOM SERVICES COMPANY LLC
401 MERRITT 7
9   NORWALK, CT 06851

10   FRONTIER COMMUNICATIONS PARENT, INC.

11   ,

12   THE PRUDENTIAL INSURANCE COMPANY OF
AMERICA

13   ,

14                                   Respondents

15

16   **1.** Respondent **CITIZENS TELECOM SERVICES COMPANY LLC** is an **employer** subject to
17   suit under the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et
seq.).

18   **2.**Complainant is naming **FRONTIER COMMUNICATIONS PARENT, INC.** business as Co-
Respondent(s).
19   Complainant is naming **THE PRUDENTIAL INSURANCE COMPANY OF AMERICA** business
20   as Co-Respondent(s).

21   **3.** Complainant **Paul Martineau**, resides in the City of , State of .

22   **4.** Complainant alleges that on or about **August 30, 2024**, respondent took the
23   following adverse actions:

24   **Complainant was discriminated against** because of complainant's disability (physical,
intellectual/developmental, mental health/psychiatric) and as a result of the discrimination
25

26                                   -1-
*Complaint – CRD No. 202411-27091918*
27   Date Filed: November 18, 2024

28
CRD-ENF 80 RS (Revised 2024/05)

1    was terminated, denied any employment benefit or privilege, denied accommodation for a
2    disability.

3    **Complainant experienced retaliation** because complainant requested or used a disability-
     related accommodation and as a result was terminated, denied any employment benefit or
4    privilege, denied accommodation for a disability.

5    **Additional Complaint Details:** On or about October 23, 2023, Mr. MARTINEAU was hired
6    by FRONTIER COMMUNICATIONS PARENT, INC ("FRONTIER") and CITIZENS
     TELECOM SERVICES COMPANY LLC ("CTS") as a Senior Account Executive. At all times
7    during Mr. MARTINEAU's employment, FRONTIER was the parent company of, owned and
8    operated, CTS.

9    Throughout his tenure with Defendants, Mr. MARTINEAU worked a hybrid work schedule
     which included remote work and two days in an office located at 5077 East Lew Davis St.,
10   Long Beach, California 90808. Throughout his time working for Defendants, Mr.
     MARTINEAU was an exemplary employee and received no write ups.

11   On or about July 9, 2024, the Mr. MARTINEAU's psychological therapist Tj Punchard MA,
12   MA, acting under the supervision of Dr. Jamie Brown, Psy. D. placed Mr. MARTINEAU on a
     short-term disability leave due to stress and anxiety. The therapist provided a note indicating
13   that Mr. MARTINEAU's condition would create barriers to social interaction, including
     customer contact, direct supervision, and small group work. As a result, Mr. MARTINEAU
14   was designated as totally and temporarily disabled. Mr. MARTINEAU's initial return to work
     date was September 15, 2024.

15   On or about July 9, 2024, the same day Mr. MARTINEAU received his note, Mr.
16   MARTINEAU emailed the note to Defendant's human resources representatives, Dara
     Chenevert ("Ms. Chenevert") and Erin Palmer ("Ms. Palmer"). Mr. MARTINEAU indicated
17   that he would need to take a leave from work.

18   On or about July 10, 2024, Ms. Palmer emailed Mr. MARTINEAU informing him that he
     would need to use PTO for the first 5 days of illness. According to the email, if the illness
19   extended beyond five (5) business days, Mr. MARTINEAU was eligible for full/partial short-
     term disability and would need to open a s short term disability claim with THE
20   PRUDENTIAL INSURANCE COMPANY OF AMERICA ("PRUDENTIAL"). Mr. MARTINEAU
     promptly submitted his short-term disability request to PRUDENTIAL and received an email
21   confirming his request from July 10, 2024, through September 15, 2024.

22   On or about July 16, 2024, PRUDENTIAL sent Mr. MARTINEAU a letter indicating they are
23   "currently reviewing [Mr. MARTINEAU's] claim for Short Term Disability (STD) offered
     through Frontier Communications." In the letter PRUDENTIAL requested Mr.
24   MARTINEAU's doctor's notes from July 1, 2024, through July 16, 2024, and recommended
     Mr. MARTINEAU authorize his provider to submit documentation directly to PRUDENTIAL.

25

26                                           -2-
27
     Date Filed: November 18, 2024
28
                                                              CRD-ENF 80 RS (Revised 2024/05)

Mr. MARTINEAU promptly provided the requested doctor's notes and authorizations to PRUDENTIAL.

On or about August 19, 2024, PRUDENTIAL sent Mr. MARTINEAU a letter denying Mr. MARTINEAU's leave request. The letter stated: "We have completed our review of your request for loss of income benefits and leave of absence benefits. Please read this letter in its entirety. It provides you with important information about the loss of income benefits and leave of absence services we administer for your employer." The letter went on to indicate that PRUDENTIAL was "unable to approve [Mr. MARTINEAU's] loss of income benefits." PRUDENTIAL's letter stated that "[Mr. MARTINEAU's] symptoms are directly related to going out on medical leave. There is no increase in treatment or severity of symptoms that would prevent [Mr. MARTINEAU] from performing [his] regular occupation. Therefore, [PRUDENTIAL] [has] determined that the information in [Mr. MARTINEAU's] file does not support impairment that would prevent [Mr. MARTINEAU] from performing the material and substantial duties of [his] regular occupation. As a result, [PRUDENTIAL] [has] denied [Mr. MARTINEAU's] claim."

On or about August 19, 2024, Mr. MARTINEAU sent his therapist a text message and informed him of his leave request denial. Mr. MARTINEAU's therapist said he would send PRUDENTIAL a letter to clarify Mr. MARTINEAU's need for a leave.

On or about August 26, 2024, human resources representative Jaclynn Unangst ("Ms. Unangst") sent Mr. MARTINEAU a letter indicating that Mr. MARTINEAU has been continuously absent from work since July 10, 2024, and since his short-term disability leave was denied, Mr. MARTINEAU's absences were unexcused. The letter went on to indicate that Mr. MARTINEAU's job was in jeopardy. However, Mr. MARTINEAU did not receive this letter until September 20, 2024, when Ms. Unangst emailed it to Mr. MATINEAU directly. Defendants had Mr. MARTINEAU's old address and email address on file.

On or about August 30, 2024, Ms. Unangst sent Mr. MARTINEAU a termination letter from Defendants. The letter indicated Mr. MARTINEAU was terminated due to job abandonment. However, Mr. MARTINEAU did not discover he had been terminated until September 20, 2024, when Ms. Unangst emailed him the termination letter and warning letters directly. Further, Ms. MARTINEAU did not receive a physical copy of the termination letter until the letter was forwarded to his new address by USPS on September 21, 2024. Notably, the termination letter had a postmark date of September 6, 2024.

On or about September 16, 2024, Mr. MARTINEAU, while still unaware he had been terminated, emailed Ms. Palmer a new note from his therapist that extended his leave until November 15, 2024. Additionally, Mr. MARTINEAU requested Defendants complete an EDD form so that he could receive State disability benefits. The next day, on or about September 17, 2024, Ms. Palmer replied to Mr. MARTINEAU's email and said, "I am not your HRBP." Ms. Palmer then redirected Mr. MARTINEAU to Ms. Unangst.

-3-

*Complaint – CRD No. 202411-27091918*

Date Filed: November 18, 2024

CRD-ENF 80 RS (Revised 2024/05)

1   On or about September 17, 2024, Mr. MARTINEAU, still unaware he had been terminated,
2   uploaded an updated treatment summary from his therapist onto PRUDENTIAL's online portal.

3   On or around September 20, 2024, Ms. Unangst replied to Mr. MARTINEAU's email and
4   informed him that the EDD form was already completed and sent to the State. Additionally,
    Ms. Unangst told Mr. MARTINEAU he was terminated and attached his termination letter
5   along with the aforementioned warning letter to the email. Finally, Ms. Unangst told Mr.
    MARTINEAU he was overpaid $15,525.49 while he was absent and told Mr. MARTINEAU to
6   reach out to discuss repayment.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
                                              -4-
27
    Date Filed: November 18, 2024
28
CRD-ENF 80 RS (Revised 2024/05)

VERIFICATION

I, **Ron L Zambrano**, am the **Attorney** in the above-entitled complaint. I have read the foregoing complaint and know the contents thereof. The matters alleged are based on information and belief, which I believe to be true.

On November 18, 2024, I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

**Los Angeles, California**

-5-

*Complaint – CRD No. 202411-27091918*

Date Filed: November 18, 2024

CRD-ENF 80 RS (Revised 2024/05)